1

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
 2               Civil Action No. 08-4395

 3                                          RECEIVED

 4                                          DEC 12 2008

 5    _____        AT 8:30_____M
                                            WILLIAM T. WALSH
 6    In Regard to the Matter of:                CLERK

 7    Bayside State Prison              OPINION/REPORT
      Litigation                            OF THE
 8                                        SPECIAL MASTER
      JULIO ANDRIAL
 9
                  -vs-
10
      WILLIAM H. FAUVER, et al,
11
              Defendants.
12    _____

13

14

15

16                *       *       *       *

17          TUESDAY, NOVEMBER 18, 2008

18                *       *       *       *

19

20

21

22    BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

23

24

25
```

1

2

3                    Transcript of proceedings in the above

4     matter taken by Theresa O. Mastroianni, Certified

5     Court Reporter, license number 30X100085700, and

6     Notary Public of the State of New Jersey at the

7     United States District Court House, One Gerry Plaza,

8     Camden, New Jersey, 08102, commencing at 1:00 PM.

9

10

11

12

13

14

15

16

17                 **MASTROIANNI & FORMAROLI, INC.**

18            **Certified Court Reporting & Videoconferencing**

19                       **251 South White Horse Pike**

20                       **Audubon, New Jersey 08106**

21                              **856-546-1100**

22

23

24

25

```
 1

 2     A P P E A R A N C E S:

 3

 4

 5           ROSELLI & GRIEGEL, PC
             BY:  JAMES LAZZARO ESQUIRE
 6           1337 STATE HIGHWAY 33
             HAMILTON SQUARE, NEW JERSEY  08690
 7           609-586-2257
             ATTORNEYS FOR THE DEFENDANTS
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              JUDGE BISSELL:  I'm reopening
2    proceedings for the purpose of delivering a bench
3    opinion in the complaint brought by Julio Andrial,
4    A-N-D-R-I-A-L, docket number 08-4395.
5              This opinion/report is being issued
6    pursuant to the directives of Order of Reference to a
7    Special Master and the Special Master's Agreement and
8    the guiding principles of law which underlie this
9    decision to be applied to the facts upon which it is
10   based as set forth in the jury instructions in the
11   Walker and Mejias jury charges to the extent
12   applicable to the allegations of Mr. Andrial.
13             As finalized after review under Local
14   Civil Rule 52.1, this transcript will constitute the
15   written report required under paragraph seven of the
16   Order of Reference to a Special Master.
17             Mr. Andrial was housed in F Unit at the
18   time of the death of Officer Baker and that, of
19   course, was the unit which Mr. Baker supervised and
20   which was evacuated to the gym on the very day of
21   that event.
22             I've reviewed at length the testimony
23   of Mr. Andrial which essentially concerns three
24   incidents in the course of his incarceration.  The
25   first of these on or about July 30th, the date of

1   Baker's death, is recounted first at pages 17 through
2   21 of the transcript of September 29th, 2008, the
3   date he testified.  Those are events allegedly
4   occurring outside of his cell.  The second segment
5   can be found, among other places I'm sure, at page 26
6   of that transcript involving his allegations of
7   mistreatment in the gym on the same day.  And the
8   third relating to a beating which he allegedly
9   received in B Unit on or about the 23rd of September
10  after the close of the lockdown but apparently upon
11  the discovery of weapons or altered objects that
12  could be considered weapons in his cell. B Unit was a
13  detention unit for those facing charges or otherwise
14  involved in inappropriate activity.
15              I'm not going to dwell at length on his
16  testimony because, frankly, I find that it has too
17  many holes in it.  And, furthermore, it's punctuated,
18  if that's the way to put it, with such a number of
19  improbabilities that at the very least he has failed
20  to sustain his burden of proof of the alleged conduct
21  against him by a preponderance of the believable
22  evidence.
23              All of the events which allegedly
24  occurred in the vicinity of his cell on the 30th of
25  July, as he states it, occurred outside of the cell

1   itself on the tier in full view of others including
2   the duty officer.
3              Now, I'm not going to say that's
4   impossible, but frankly, it's not inherently
5   credible.  He talks in terms of being beaten with the
6   night sticks, as they've come to be called, carried
7   by the SOGs and having been kicked at the time and so
8   forth.
9              There have been occasions in the course
10  of these hearings and probably will be in the future
11  where I've made a determination that where this type
12  of activity takes place within the cell itself and,
13  therefore, less likely to be visible to persons other
14  than the perpetrators, it has a greater likelihood of
15  having taken place.  But in a situation like this, in
16  full view, on the very day of the murder of Officer
17  Baker, Mr. Andrial's testimony is inherently
18  incredible.  And I find that he's failed to establish
19  that it, in fact, happened.
20             He talks in terms of assaults in the
21  gym and once again it appears at page 26 among
22  others, I'm not going to recite them here at length.
23  I'll incorporate that testimony by reference only to
24  demonstrate his characterizations.  However, it's
25  perfectly clear that there is absolutely no reference

1   to this event in the answers that he gave to
2   interrogatories appearing at D-411 and also in the
3   supplemental answers to interrogatories in D-412. In
4   each case they make reference to the gym, but they
5   refer only to, in the case of D-411, "they took me to
6   the gym and made me sit on the hard floor execution
7   style for more than 14 hours straight."
8              Similarly, he testified in his answer
9   to supplemental interrogatories, D-412, "I was forced
10  to sit down for approximately 14 hours in the
11  gymnasium and while I was there I was not allowed to
12  go to the bathroom and I urinated in my pants." So
13  once again, no allegations of having been beaten in
14  the gym as he testified to here in open court.
15             He testified also, as I said, to the
16  alleged events on the 23rd of September when he was
17  transferred from F Unit to B Unit because certain
18  weapons had been found in his cell. And once again,
19  although the interrogatories, D-411 and 412, are
20  sufficiently comprehensive to have elicited an answer
21  reflecting that incident, they are completely silent
22  on the subject.
23             Furthermore, the report of Sergeant
24  Roberts which appears as D-413, talks in terms of the
25  events in question, describes the weapons that were

1   siezed and mentions that Mr. Andrial was transferred
2   to B Unit without incident.
3           It's just not, once again, sufficiently
4   credible for Mr. Andrial to describe now that alleged
5   beating in B Unit. Now, he may or may not have
6   testified to those events at his deposition also
7   taken several years after the event. I don't
8   consider that to be particularly significant here.
9   But it's a fact that it has no mention in his
10  interrogatory answers. Additionally, the alleged
11  events of September 23rd are refuted by alleged
12  participants Roberts, Keiser and Sprenger.
13          I consider also the inherent lack of
14  credibility regarding events at his cell, (supposedly
15  in plain view on the wing) and in the gym,
16  (supposedly in plain view of a number of civilian
17  people from administration, from the ombudsman, from
18  Internal Affairs who would have been particularly
19  vigilant on this day, the very beginning of the
20  lockdown period). Mr. Andrial just has not sustained
21  his burden of proof.
22          Finally, although not every item of
23  evidence has been discussed in this opinion/report,
24  all evidence presented to the Special Master was
25  reviewed and considered. For the reasons set forth

1   above, I recommend in this report that the district
2   court enter an order and judgment of no cause for
3   action with regard to Julio Andrial.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1          C E R T I F I C A T E

2

3          I, Theresa O. Mastroianni, a Notary Public and

4    Certified Shorthand Reporter of the State of New

5    Jersey, do hereby certify that the foregoing is a

6    true and accurate transcript of the testimony as

7    taken stenographically by and before me at the time,

8    place, and on the date hereinbefore set forth.

9          I DO FURTHER CERTIFY that I am neither a

10   relative nor employee nor attorney nor counsel of any

11   of the parties to this action, and that I am neither

12   a relative nor employee of such attorney or counsel,

13   and that I am not financially interested in the

14   action.

15

16

17

18

19   _____JO Mastroianni_____
     Theresa O. Mastroianni, C.S.R.
20   Notary Public, State of New Jersey
     My Commission Expires May 5, 2010
21   Certificate No. XI0857
     Date: November 18, 2008
22

23

24

25